Court. Good morning Mr. Kurtz, you may proceed. Thank you, Your Honor, very much. Good morning Mr. Wray, court staff, law clerks. My name is John Kurtz, Your Honors. I represent Stuart Wright and I'm privileged to represent him in this case, appealing a summary judgment regarding four counts of basically common law Missouri claims under the Federal Tort Claims Act. The question being, of course, why should this court have any interest in reversing the magistrate judge in this case? The answer to that begins with Federal Rule of Civil Procedure 83A, which authorizes district courts to, quote, adopt and amend rules governing the practice. That's what happened here, is that the Western District of Missouri has Rule 56.1 saying the move-on must, mandatory, must respond to the non-moving party statement of additional facts. And if they fail to, refuse to, choose not to, then there's consequences for that. Local Rule 56.1C directs that in the absence of controversy, the statements are deemed admitted for the purpose of summary judgment. And, of course, those go along with the case law definition regarding no genuine dispute, regarding reasonable inferences in favor of the non-mouvant, the light most favorable. So I go through this case, we brief it. I look in the United States reply suggestions, 12 pages in length, 3,370 words, no reference whatsoever, your honors, to the 35 paragraphs that I submitted. The seven declarations, the one affidavit, all ignored, not one word said there. I then read the magistrate judge's order, 19 pages, 6,149 words, no reference whatsoever, not one word to all of those things that we submitted. Me, being a lifelong self-doubter, I thought, my God, did I fail to submit them? I mean, if the United States says nothing about them, if the district court through the magistrate judge makes no reference whatsoever, what happened? Well, I looked and I found that I did submit them. And although I did, what the magistrate said was, at page four, plaintiff has not provided any argument or evidence which disputes any of the facts listed below. At page 18, the undisputed facts set forth by defendant. And so I look at that situation and also on 52 paragraphs of theirs, I had various objections. The court says at page four, this court will not address any of the general objections. And the United States of America's first response is, it's harmless error. My urging is that you all at the eighth circuit court do not believe that it is harmless error to ignore what you must do by local rule. And for a court to not enforce what local rules provide. The whole thing seemed very curious. Past harmless error. The only other explanation from the defense, excuse me, from the United States appears in the 161 words in footnote 19 on page 34, where they cite cases. And those citations are there. The tramp case is the first one of those in which it said, well, you don't have the claim being made at footnote 19 is, you know, you had discretion to enforce these rules. So we look at the tramp case. There was a claim there about possible non-application of rules. The court found that there was reference made to the filing and that many facts therein were throughout the analysis. That's not what happened here. The second one is capital sprinkler, in which it refers to a D.C. circuit rule, but different from the Missouri rule. The D.C. circuit rule 7H provides the district court may assume facts not denied in the opposition. Let's, you know, we've kind of read what you've written, and the question I've got is this, is that I think the assertions likely to be made that the factual submissions that you made were duplicative and that they were repetitive and that they had previously been considered and not substantially different than the facts that had been addressed and presented earlier. And I'm sure you disagree with that. And I would like you to explain why, because I think that building that argument is important. Your Honor, I believe that in briefing, we lawyers with law degrees have the responsibility to say something like that. Had that been the government's position, they had the obligation to say that to the district court through the magistrate judge. They never said that. And I recognize that an Eighth Circuit judge, as you just did, can astutely take that position. You're right, Your Honor. I would disagree with it very respectfully. They can take that position. They have an obligation. If they're not going to respond and not follow rules, they have an obligation to say, here's the reason why. They instead make no reference whatsoever to it at all. And in that Kapler-Sprinkler citation, they say that stands for the proposition that you don't have the federal courts have held widely. That's not what it was. It said that at one case where they may assume and they chose not to assume, but may assume is not the standard here. Brannon versus Lucco. They found no abuse of discretion there on an issue about striking things whereby there had not been a citation given. And the last one is an Eighth Circuit case. Given is justification for their saying nothing about this and not saying the things that you, Judge Erickson, just sought out or tried to flesh that out. And didn't they owe that to the district judge? Didn't they owe it to Stuart Wright as a party to be told that sort of thing? The United States of America needed to brief it. But the last one they cite then is Reasonover versus St. Louis County. And then in Reasonover, what happened was Reasonover failed to file a timely response. And what the Eighth Circuit said was there was not an abuse of discretion in deeming facts admitted. So it's the opposite. Reasonover is cited by them for their justification in this case. And so it does not support their situation. In terms of their duplicativeness, I just need to return to it one more time to your question, Judge Erickson. In terms of any claim to duplicativeness, I believe if that's something they wanted to rely upon in the district court with the magistrate judge, they need to put that in their brief. So I had the opportunity to respond to that very claim. And their failure to do so is unfair and improper to Stuart Wright. So past the matter of not following the rules, then are these four causes of action, four state court causes of action. And, of course, what my desire is to have three judges from the Dakotas and Arkansas to say to the magistrate judge in Kansas City, there's Missouri law here. There's Missouri law that needs to be followed. There's Missouri law with different points in them and different standards. And the situation is we're three years away from our bicentennial in Missouri. During all of those years, there's been carefully developed case law not identical to constitutional case law in all respects. And as was cited in briefs, I cite to numerous cases in numerous circuits which say it cannot be the situation always that if there's a constitutional ruling, you just kind of disregard what the states say about it. But the states have principles. And one of those in Missouri under false arrest, the first of the four, is that in this mistaken identity situation, here's what happens under false arrest law in Missouri. Defendant is charged with knowing all the facts he could have obtained by due diligence before making the arrest and had a duty to use all reasonable means to avoid a mistake of identity. And in particular, in the non-duplicitiveness, I added additional declarations that I was able to find, including the one who was there closest to see it, the referee on the court. So it was new and different information. And what was the situation that should have been taken into account that was a due diligence matter that they needed to prove if they wanted to go out on that affirmative defense on the basis of a summary judgment? Vinyl Wilson, 5'11", 200. Stuart Wright, 6'5", 280. And in terms of their due diligence, their confidential source was sitting right there in that room. On the videotape, you can see the marshals coming in, not checking with anybody. They had no signal. Is that him? Is that him? Well, he's wearing number 23, which happens to be Michael Jordan's number, kind of a popular number among basketball players. And so that's all they have. Is that due diligence when you have an entire gymnasium full of people and their confidential source to say that's either Vinyl Wilson or it's not? I suggest to you that that does not meet that standard and that that case law is something which Stuart Wright should be given his day in court on. False imprisonment, I believe we've kind of narrowed that to dealing with the situation where they held him for another 20 minutes. He's taken out of the gymnasium. They're shown his identification. A fellow law enforcement officer says that's not him. That's not him going out that door. And so what are their claims in that regard? Well, they claim that, you know, that's what that 20 minutes was for, was to diffuse the situation and reorient themselves. Now, if you look at the video, they're not going over to that car. In fact, according to the evidence which we submitted, they're standing around laughing about this man for 20 minutes in there. And also, in contrast to some of the other fellows that we heard about earlier today, Stuart Wright is not a drug dealer, is not somebody who's been having problems throughout his life. Behaves, I believe, honorably. There's no F-bombs dropped by this guy. That's no part of the evidence. He is in that car, face down, handcuffed with his hands behind him for 20 minutes while they're laughing outside. I suggest that this case is not one for there to be something that remotely sounds like there's a new 20-minute standard to reorient yourselves. Counsel, in the previous opinion arising from this case, it was noted that the marshals discovered that Wright had two outstanding warrants. Isn't that, and we held that that would provide separate and independent basis for continued detention. The evidence, in fact, in the record is, Your Honor, that that was discovered at the end just before they released him. It was nothing that the government even contended that that's something that they were holding him on. It has never been contended that for the 20 minutes they had there, they said, well, it's the traffic warrants. That's what they were doing. And so the evidence. Does that really matter if there are warrants outstanding just because the officer didn't? If they, Judge Shepard, sir. More of an objective standard than this subjective kind of thing that you're talking about. I believe that for us to expose facto say, well, you get the benefit of something you didn't even know about. And we're not acting on the basis of. I believe that is something that evidentiary style should not be the case, Your Honor. And I appreciate your question. And on abusive process, the matter of the district court said they didn't show ulterior purpose, which they had to show. Now, abusive process is not anything that had been decided previously in any of the prior rulings. Ulterior motive is not a sine qua non at all. And the matter of warrant not authorized by the process actions, not authorized by the process. In this situation, it was not authorized by the process to either reorient themselves or to use him to try and find out where vinyl Wilson is. And I urge this court not to think about putting some ruling together that would say it's OK to use him for 20 minutes and to hold him. So you can send somebody to question him about where somebody else is. That's not the way that that should be. And the last one, your honors, is the matter of the assault. And I did put in evidence and this was brand new and not duplicative. The IACP standards on this as to what type of force it is that can and should be used in the Missouri standard. There are no more force injuries when necessary. With your permission, I'll save about a minute and 50 seconds. You may do so. Thank you, Your Honor. Mr. Ray. Good morning, Your Honor. Good morning, sir. You may proceed. May it please the court. My name is Jeff Ray. I'm the deputy U.S. attorney, Western District of Missouri. I stand here today representing the United States. One would think a case that's before this court for the third time would be unusually difficult or complex. But, in fact, we believe this is not. I will try to get to the four counts that were before the court quickly, but I do want to address one point that my good friend, Mr. Kurtz, raised. And that was with respect to the evidence that he presented in response to our summary judgment motion and the contention that the United States did not address or at all make any mention of the evidence to the district court. To the contrary, I would direct the court to Appendix Volume 8, page 1246, where, in our reply suggestions, we specifically talked about the evidence that Mr. Kurtz submitted. But we also noted to the court that that evidence did nothing to change the analysis, as were not the actions of Sean Franklin and Chris Wallace were objectively reasonable under the circumstances. The affidavits merely provide subjective testimony that is redundant of the testimony of the other affidavits offered by right. And the expert report, at best, merely offers an inadmissible legal opinion that this court and the Eighth Circuit got it wrong the first time. What is important in this case is that, other than these three pieces of evidence, these two affidavits and the one expert report, the record before the district court was identical with respect to the summary judgment motion for the FTCA, as it was for the qualified immunity analysis. We are not taking the position, and we have never taken the position, that qualified immunity in and of itself on a Bivens claim means there can be no FTCA action. However, it is perfectly clear that many states, Missouri being among them, have fashioned their rules of tort and negligence to allow the same sort of breathing space, the same sort of reasonable mistakes that are inherent within qualified immunity analysis. In this particular case, we argue to the district court, based on the same record that was in front of the court with respect to Bivens, that, with respect to the false arrest and the false imprisonment, that these actions were legally justified. We argued, with respect to abusive process, that there was no evidence of ulterior motive. And with respect to assault and battery, we argued that the force that was used was reasonable. We believe this is consistent, not only with the prior ruling of the district court, but of this court's opinions with respect to the qualified immunity analysis under Bivens. Of most particular import in this case, and the one inescapable fact, is that this incident was videotaped. And that fact overwhelms and addresses almost all of the concerns that Mr. Kurtz has raised. With respect, for instance, to his expert report, if you read the expert report, all the expert says is that in those cases where there is passive resistance and the person being arrested is offering no resistance to police, then the use of a taser would not be necessary. The problem is that is completely contrary to what this court found when they viewed the same videotape that was also before the district court. In the very first right opinion issued by this court, indeed, this court admonished the district court that it need not accept the non-movement version of facts when the video evidence conspicuously refutes and completely discredits the non-movement version. Subsequently, when this case was on appeal the second time, viewing that videotape, this court said we must view the facts in the light most favorable to right. But the fact that he did not yield to the marshals when they approached was sufficient evidence for the marshals to have probable cause to believe that Wright had committed the crime of resisting arrest. Our contention is that the additional evidence that Mr. Kurtz provided, as well as the affidavits that were originally before the district court during the FTCA part of this, certainly do set forward a version of facts that is most favorable to Mr. Wright and perhaps would lead to a factual dispute. But that version of facts is in direct contradiction to the objective evidence that is shown on the videotape. Indeed, if you look at one of the affidavits submitted by one of the witnesses that Mr. Kurtz wanted to use on the most recent motion for summary judgment, one of the witnesses says that as the marshal approached Mr. Wright, he raised his hands and tried to surrender before being tased. Obviously, if those were the facts, this would be a much different case. If there wasn't a videotape, it would perhaps require a fact finder to determine whether or not in fact that occurred. In this case, the videotape demonstratively unquestionably shows that that did not happen. This is no different than any other summary judgment case where there are numerous facts that are not material to the ultimate conclusion reached by the court. The court need not discuss them. The court need not list them in findings of fact. With respect to the local rules, we believe those cases that we cited and that Mr. Kurtz talked about today stand for the proposition that the district court has discretion in applying the local rule. And the test on appeal is not whether or not the local rule was adhered to, but whether or not in fact summary judgment was properly entered on the record before the district court. We believe in this case that that is exactly what happened. With respect to false arrest and false imprisonment, we believe that the substantial evidence established as a matter of law that these officers made a reasonable mistake of identity with respect to Mr. Wright. And they reasonably believed it was a violent, dangerous felon named Vinyl Wilson when they arrested him on the court. But even if the court is concerned that there are factual disputes there, what is clear from the court's own ruling in the prior case is that these officers had probable cause to believe that the person they were arresting was resisting arrest. They gave them an independent basis to both arrest and temporarily detain Mr. Wright. That is legal justification. And under Missouri law, that is a complete defense to both those torts. With respect to any claim that perhaps the detention lasted an unreasonably long amount of time, once again, this court under the Bivens case, viewing the facts most favorably to Mr. Wright, concluded that the detention itself for 20 minutes was reasonable under all of the circumstances. Once again, we're not arguing that a finding of qualified immunity necessarily in every case invalidates an underlying tort. But when there are elements in common, and when those elements have been decided a certain way, in this case in favor of the Bivens plaintiffs, that that same finding is appropriately made with respect to the underlying tort. And in this case, that provided legal justification for both the arrest and the subsequent detention of Mr. Wright. Similarly, with respect to abuse of process, there is no evidence. There was none presented during the summary judgment pleadings, and there is none before this court that these officers walked in with an ulterior motive. There is no evidence that they used process in an inappropriate way. And finally, with respect to assault and battery, once again, Missouri tort law, similar to what we see in qualified immunity, has provided law enforcement officers with a certain amount of breathing space. Everyone understands that part of the job of a law enforcement officer, on occasion, requires them to commit what would otherwise be, in polite society, an assault and battery. That's unavoidable. And what the courts have said is we are going to not find that there is a tort for assault and battery if the law enforcement privilege applies, if the touching was privileged. And that boils down to essentially the same test we have for qualified immunity. Did the officer use more force than was reasonably necessary? In this case, once again, we believe, as a matter of law, the evidence established that these officers believe that this was Vinyl Wilson who was on the floor, that he was a dangerous felon, that he was wanted, that there was a chance that there were others in the gym who were possibly supporters of him. But more importantly, once again, even if the court has concerns about whether or not summary judgment was proper with respect to mistaken identity, what is clear is that the videotape establishes that the person being arrested resisted arrest. And we would argue that under the law they used no more force than was reasonably necessary to apprehend Mr. Wright given that he was resisting arrest. We think this case, obviously it's been before this court now a third time, but we do think that it is a straightforward case. It's a straightforward application of summary judgment. Mr. Kurtz is quite eloquent in his defense of Mr. Wright and often argues in his pleadings that Mr. Wright is entitled to his day in court. Having one's day in court does not mean for every person who believes they were damaged that they get a trial before a fact finder. The Bivens claims that were determined were not determined in the dead of night. The summary judgment motion that was decided by the district court was not done in a star chamber proceedings. These all occurred in open court. Judges have heard arguments from both parties. There was an extended period of time in which Mr. Wright could have conducted discovery of the United States with respect to his claims. He's had his day in court. We would respectfully request that based on the record that was before the district court, consistent with the prior rulings of this court, consistent with the parameters of Missouri tort law, that this court affirm the judgment entered below by the district court. Well, apparently we have no questions, so thank you for your argument. Thank you. Your Honors, the matter of not following local rules is more frequently something that comes up with schmoes like me and Stuart Wright. That's the type of people that come into court not knowing what the rules are, not knowing what the United States of America to ask you, in my view, to create a breathing space for them to say, we don't have to follow the rules and it doesn't make any difference. And they're asking for somewhat dangerous precedent, I believe, something that says that's OK. That's OK for the United States of America to not follow the rules. Stuart Wright was entitled to have them do that in this case. The first time this case came up, it was something where the decision was of this circuit to send it back to the magistrate judge because of a dissatisfaction with what the magistrate judge had done. I suggest to you we're back at a position very similar to that in which the magistrate judge needs to know if you have a party who has it within them to come to court and not follow your local rules and not provide the other side responses to their undisputed facts. A couple of things about that. One, you need to enforce it against them. And secondly, you need to say something as the trial judge on that. On the matter of the videotape, and Mr. Ray read you a thing where someone had indicated that raised hands seeking to surrender. That is the sort of information that comes about through hearing people out and for having somebody get the opportunity to say something because this was a videotape, not an audio tape. And my suggestion is that with the different elements that exist in state law, that should be something which would go with the remand as well. And on abusive process, one more time, you hear about ulterior motive. It was treated as sine qua non. It is not, in fact, the Missouri law. And there was the ulterior motive in terms of using this guy's custodial moment to find out other information. My time reads zero, zero, zero. Thank you very much for hearing me out today, Your Honors. Thank you for the argument. The case is now submitted and we will take it under consideration.